# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

ALEX WILLIAM CASTELLON FUENTES,
5408 S 7th Street
Arlington, VA 22204,

     *Plaintiff*,

  v.

QUILMES CONSTRUCTION, INC.
8131 Raphiel Court
Manassas, VA 20112

Serve: Lourdes Rojas, Registered Agent
       616 Kennedy Street
       Washington, D.C. 20011

RUBEN ROJAS
8131 Raphiel Court
Manassas, VA 20112

DIEGO LOPEZ AKA
DIEGO "CORCHO" LOPEZ
8131 Raphiel Court
Manassas, VA 20112

     *Defendants*.

Civil Case No.: 19-2497

## COMPLAINT

Plaintiff, Alex Williams Castellon Fuentes ("Plaintiff"), hereby brings suit against his former employers Quilmes Construction, Inc. ("Quilmes") and its principals Ruben Rojas ("Rojas") and Diego "Corcho" Lopez ("Lopez") (collectively "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("the FLSA"), the District of Columbia Minimum Wage Revision Act, D.C. Code § 32-1001 *et. seq.* ("DCMWRA"), and the District of

Columbia Payment and Collection of Wages Law, D.C. Code §§ 32-1301 *et seq.* ("DCPCWL"). Plaintiff alleges as follows:

## PARTIES

1. Plaintiff is an adult resident of the Commonwealth of Virginia who was employed by Defendants as a laborer during the period June 29, 2018 to July 2, 2018. Plaintiff was at all times an employee of Quilmes, Rojas and Lopez within the meaning of the FLSA, the DCMWRA, the DCPCWL and the economic reality test.

2. Rojas is an adult resident of the Commonwealth of Virginia and is an owner, director, and/or officer of Quilmes. He is also Quilmes's Chief Estimator. At all relevant times, Rojas was an "employer" of the Plaintiff within the meaning of the FLSA, the DCMWRA, the DCPCWL and the economic reality test. because: (1) he is an owner, officer, and/or director of Quilmes and is substantially involved in its operations; (2) he had functional and operational control over the terms and conditions of Plaintiff's employment, including compensation and pay practices; (3) he established and controlled the rate of Plaintiff's pay; (4) he was responsible for and paid Plaintiff his wages; and (5) he had the ability to hire and fire the Plaintiff and he in fact hired him to the laborer position at Quilmes; and (6) Rojas is also responsible for the wage violation at issue because he controlled the funds used to pay Plaintiff's wages and he failed to pay Plaintiff for work he performed on behalf of Quilmes, even after Plaintiff complained directly to him that he had not been paid.

3. Lopez is an adult resident of the Commonwealth of Virginia and is an owner, director, and/or officer of Quilmes. He is also Quilmes's General Field Superintendent. At all relevant times, Lopez was an "employer" of the Plaintiff within the meaning of the FLSA, the DCMWRA, the DCPCWL and the economic reality test because: (1) he is an owner, officer, and/or

director of Quilmes and was substantially involved in the operations of Quilmes; (2) he had functional and operational control over the terms and conditions of Plaintiff's employment, including compensation and pay practices, and scheduling; (3) he established and controlled the rate of Plaintiff's pay; (4) he was responsible for and paid Plaintiff his wages; (5) he set Plaintiff's work schedule and made arrangements to transport Plaintiff to the job site; (6) he kept track of Plaintiff's hours; (7) he supervised Plaintiff directly when Plaintiff was on the job site and directed Plaintiff in the performance of his work; (8) he had the ability to hire and fire the Plaintiff; and (9) Lopez is also responsible for the wage violation at issue because he had control over the funds used to pay Plaintiff's wages and he failed to pay Plaintiff for work he performed on behalf of Quilmes, even after Plaintiff complained directly to him that he had not been paid.

4. Quilmes is incorporated in the Commonwealth of Virginia but performs work in the District of Columbia. Specifically, Quilmes provides commercial construction services including demolition, drywall and painting, metal framing and other services. At all relevant times, Quilmes was an employer of the Plaintiff within the meaning of the FLSA, the DCMWRA, the DCPCWL and the economic reality test, because its agents or employees: (1) controlled the terms and conditions of Plaintiff's employment, including setting his rate of pay and the manner and frequency of pay; (2) supervised Plaintiff in the performance of his duties; (3) had the authority to hire and fire Plaintiff; (4) provided Plaintiff with tools and equipment to perform his tasks; (5) set Plaintiff's schedule and transported him to the job site; (6) kept track of his hours of work and maintained those records, (7) and paid Plaintiff his wages.

5. Quilmes is also an enterprise engaged in commerce, as it meets the definition of an "Enterprise Engaged in Commerce" under the FLSA (29 U.S.C. § 203(s)(1)(A)(i)), as it has: (1) employees engaged in commerce or the production of goods for commerce or employees handling,

selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

## JURISDICTION

6.  Plaintiff is asserting viable causes of action against Defendants under the FLSA, the DCMWRA and the DCPCWL because Plaintiff is entitled to the protections of that law. During his employment with Defendants, Plaintiff spent all of his working time in the District of Columbia. *See* D.C. Code § 32-1003(b)(1) ("A person shall be employed in the District of Columbia when [t]he person regularly spends more than 50% of their working time in the District of Columbia.").

7.  The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under § 1331 because Plaintiff's claims involve federal questions and the Court has pendant jurisdiction over the Plaintiff's District of Columbia claims under 28 U.S.C. § 1367.

8.  This Court has *in personam* jurisdiction over Defendants because they conduct business in the District of Columbia, and because Quilmes is licensed to conduct business in the District of Columbia as a foreign entity, and because all of the events giving rise to Plaintiff's claims occurred in the District of Columbia.

## STATEMENT OF FACTS

9.  In June 2018, Plaintiff was hired to the position of laborer by Rojas. Rojas promised to pay Plaintiff at the rate of $15.00 per hour, in cash, and on a weekly basis. Rojas directed Plaintiff to contact Lopez to get instructions about where he would be working his first week.

10. Plaintiff contacted Lopez as directed and Lopez arranged for Plaintiff to be transported to the job site located at 2001 M Street, N.W., Washington D.C. 20036. Quilmes was performing renovation and demolition work on this property and that was Plaintiff's first job assignment.

11. While on the job site, Lopez supervised Plaintiff, assigned him various tasks to perform, including general clean up duties, painting, sweeping hauling trash. Lopez also kept track of the hours Plaintiff worked by recording when Plaintiff began work and when he ended work in a hand-written log book.

12. Plaintiff worked the following days and hours for Quilmes at the 2001 M Street:

    a  June 29 – June 30, 2018: Plaintiff worked the nightshift which began at approximately 5:00 p.m. on June 29 and ended at approximately 10:00 a.m. on June 30. Plaintiff took a 30-minute break during this shift. A total of 16.5 hours.

    b  July 1 – July 2, 2018: Plaintiff worked the nightshift which began at approximately 5:00 p.m. and ended at approximately 10:00 a.m. Plaintiff took a 30-minute break during this shift. A total of 16.5 hours.

13. Plaintiff severely injured his back during his second shift and was not able to return to work. He called Lopez multiple times after leaving to make arrangements to receive his paycheck but Lopez ignored his calls. Plaintiff then called Rojas who promised to look into it. Rojas eventually got back to Plaintiff and told him that Lopez though Plaintiff did not work hard enough so they were not going to pay him.

14. Plaintiff is owed wages for 33 hours of work, which as a value of $495.00.

## COUNT I
## VIOLATIONS OF THE FLSA

15. Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

16. Plaintiff was engaged in commerce and/or handled goods that have been moved in commerce, and alternatively, Quilmes was an enterprise engaged in commerce, at all times relevant to the complaint.

17. Defendants violated the FLSA by knowingly failing to pay Plaintiff anything at all (not even minimum wage) for the 33 hours of work he performed during the period June 29, 2018 to July 2, 2018. The FLSA minimum wage is $7.25 per hour.

18. Defendants' actions were willful as defined by the FLSA and were not undertaken in good faith.

19. Defendants are liable to Plaintiff under 29 U.S.C. § 216(b) of the FLSA, for his unpaid minimum wage compensation ($239.25), plus an additional equal amount as liquidated damages ($239.25), court costs, reasonable attorneys' fees and expenses.

20. The precise amount owed to the Plaintiff by Defendants for unpaid minimum wages and liquidated damages is $478.50.

## COUNT II
## (VIOLATIONS OF THE DCPCWL)

21. Plaintiff re-alleges and incorporates herein the allegations contained in the paragraphs above.

22. At all relevant times, Defendants were Plaintiff's "employers" within the meaning of the DCPCWL because they either collectively or individual had the power to hire Plaintiff, set

his rate, method and frequency of pay, and set his schedule. Rojas individually was responsible for transporting Plaintiff to the job site, and paying him.

23. Defendants violated the DCPCWL by knowingly failing to pay Plaintiff anything at all for the 33 hours of work he performed during the period June 29, 2018 to July 2, 2018. The total amount of minimum wages owed by Defendants to Plaintiff under the DCPCWL is $495.00.

24. Plaintiff was entitled to receive these wages on his final paycheck which was due on July 11, 2019, seven working days after he resigned (on or about July 2, 2018). See D.C. Code §32-1303 (2).

25. Additionally, 30 working days have passed since July 11, 2018. Therefore, Defendants are liable to Plaintiff for the back wages ($495.00) plus liquidated damages equal to three times the amount of unpaid wages ($1,485.00). See D.C. Code §32-1303 (4) (liquidated damages accrue at 10% per working day following the day payment is due). The total amount owed to Plaintiff by Defendants for back pay and liquidated damages under the DCPCWL is $1,980.00.

## COUNT III
### (VIOLATIONS OF THE DCMWRA)

26. Plaintiff re-alleges and incorporates herein the allegations contained in the paragraphs above.

27. At all relevant times, Defendants were Plaintiff's "employers" within the meaning of the DCMWRA because they either collectively or individual had the power to hire Plaintiff, set his rate, method and frequency of pay, and set his schedule. Rojas individually was responsible for transporting Plaintiff to the job site, and paying him.

28.     Defendants violated the DCMWRA by knowingly failing to pay Plaintiff anything at all for the 33 hours of work he performed during the period June 29, 2018 to July 2, 2018. The total amount of minimum wages owed by Defendants to Plaintiff under the DCMWRA is $495.00.

29.     As a result of the violations by the Defendants, they are liable to Plaintiff for unpaid minimum wages ($495.00) and liquidated damages equal to three times the unpaid minimum wages ($1,485.00), a grand total of $1,980.00.

30.     As a result of the violations of the Defendants, Defendants are also liable for Plaintiff's reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Legal Services Index Rate ("LSI") and/or the rates set forth in Salazar ex rel. v. District of Columbia, 809 F.3d 58 (D.C. Cir. 2015) and DL v. District of Columbia, 924 F.3d 585, 592-95 (D.C. Cir. 2019), as required by D.C. Code § 32-1308 (b)(1).

## RELIEF REQUESTED

Plaintiff prays this Court:

a.      Pursuant to the FLSA, enter judgment against Defendants, jointly and severally, and in favor of Plaintiff in the amount of $239.25 plus an additional amount equivalent to the wages (another $239.25), a total of $478.50;

b.      Pursuant to the DCMWRA, enter judgment against Defendants, jointly and severally, and in favor of Plaintiff in the amount of his 33 hours of unpaid minimum wages ($495.00) plus an additional amount equivalent to three times the unpaid wages (another $1,485.00), a total of $1,980.00;

c.      Pursuant to the DCPCWL, enter judgment against Defendants, jointly and severally, and if favor of Plaintiff in the amount of the unpaid wages ($495.00) plus an amount equal to three times the amount of wages owed ($1,485.00) as liquidated damages, a total of

$1,980.00; and

      d.     award Plaintiff reasonable attorneys' fees and costs incurred in this action, including fees at the Legal Services Index Rate ("LSI") and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015) and *DL v. District of Columbia*, 924 F.3d 585, 592-95 (D.C. Cir. 2019), as required by D.C. Code § 32-1308 (b)(1); and

      e.     award such other and further relief as the Court may deem appropriate.

                                          Respectfully submitted,

                                          /s/Omar Vincent Melehy
                                          Omar Vincent Melehy
                                          DC Bar No.: 415849
                                          MELEHY & ASSOCIATES LLC
                                          8403 Colesville Road Suite 610
                                          Silver Spring, Maryland 20910
                                          email: ovmelehy@melehylaw.com
                                          Phone:  (301) 587-6364
                                          Fax:    (301) 587-6308
                                          *Attorney for Plaintiff*